ADAMS, J.

<div align="center">
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
</div>

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:13CR15 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | <u>Judge John R. Adams</u> |
| RICHARD J. MIEZIN, ) | |
| ) | ORDER |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Richard J. Miezin's motion for compassionate release. Miezin requests that he be ordered to be placed on home confinement for the duration of the COVID-19 health pandemic. The motion is DENIED.

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last visited April 24, 2020). The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions. *Id*. The virus has been detected in asymptomatic persons, and its incubation period is believed to be up to fourteen days in duration. *Id*.

Currently, there is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it. *Id.* According to the CDC, "[t]he best way to prevent illness is to avoid being exposed

to the virus." *Id*. The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable, avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id*. The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if possible. *Id*.

The CDC has also indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*. Older adults – 65 or older – and people suffering from underlying medical conditions such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease or people who are immunocompromised such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id*.   Additionally, the CDC reports that "[a]pproximately 90% of hospitalized patients identified ... had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease." *Id*.

Miezin seeks release based upon the purported conditions at FCI Elkton.   Miezin contends that the prison has seen at least 3 deaths among its total inmate population of 2,456 inmates. Miezin notes, however, that he is housed in the low security satellite camp that includes only 401 inmates.   The Court now examines his arguments.

I. Exhaustion

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA),

3

2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); *with United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia*, 2020 954 F.3d at 597. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68-year-old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id.*

This Court agrees with the reasoning utilized by the Third Circuit. Moreover, the Government has compellingly argued that prior instances in which exhaustion has been excused have universally been in matters where the exhaustion doctrine was *judicially* created. The Court finds that it has no authority to disregard an exhaustion requirement put in place through properly enacted legislation from the United States Congress. As it is undisputed that Miezin has not exhausted his administrative remedies, the Court cannot grant his motion for release.

II. Merits

The Court is mindful of the risks presented by the COVID-19 pandemic. As such, the Court will address the merits of Miezin's motion at this time as well.[1]

Miezin urges this Court to consider him vulnerable under the CDC guidelines: "Mr. Miezin has hypertension, is borderline diabetic, and is 54 years of age." Doc. 55 at 3.

As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). The relevant governing policy statement provides that this Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that

1 If the Sixth Circuit were to disagree and find that exhaustion may be excused, the Court wishes to expedite consideration of any and all compassionate release requests.

"the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §1B1.13.

The application note to U.S.S.G. §1B1.13 further defines the "extraordinary and compelling circumstances" required to merit consideration for compassionate release:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is--
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

6

> (D) Other Reasons. --As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13 (Application Note 1).  Miezin appears to rely upon subsection (D) to support his motion, asserting that the pandemic qualifies as an "Other Reason" supporting release.  However, even assuming the pandemic is a proper foundation, Miezin cannot satisfy the initial prong of review – "Provided the defendant meets the requirements of subdivision (2)." Subdivision 2 notes that compassionate release cannot be ordered unless "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Miezin pled guilty to and was convicted of one count of Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct.  In his plea agreement, Miezin admitted to using the file sharing software Gigatribe to communicate with others involved in child pornography and exchange images of child pornography.  Miezin admitted to engaging in this conduct from April 27, 2010 to February 27, 2011.  During that time frame, on **eleven** separate occasions, undercover officers were able to download child pornography from Miezin's computer.  When his computer was seized, Miezin's "hard drive contained approximately 17 video files of prepubescent males engaged in sexually explicit conduct, including oral to genital contact, anal penetration, and lascivious exhibition of the genital region." Doc. 17 at 10.

Miezin, however, did not simply trade child pornography.  He also engaged in numerous chat sessions with other users.  During those chat sessions, Miezin indicated 1) a desire to engage in sexual intercourse with a 13-year old boy, and 2) that he had actually engaged in some sexual conduct with a 13-year old boy.  While Miezin appeared to assert during his underlying

7

proceedings that these chats were mere "puffery" designed to build his standing with other like-minded individuals, they are nonetheless highly disturbing. It is only more disturbing that while engaging in these chat sessions, Miezin repeatedly used user names that were variations of his nephews' names.

Miezin's underlying conduct, specifically his acts to evade detection, only serves to add to the Court's conclusion that he would be a danger to the community if released. Miezin did not simply create a Gigatribe account and utilize it for the 10 months specified in the indictment. Instead, Miezin repeatedly created accounts, viewed and distributed child pornography, and then deleted the entirety of the account. Miezin repeated this conduct over and over again in an attempt to shield himself from any law enforcement investigation. Moreover, the Government accurately described the unique nature of Gigatribe during Miezin's sentencing: "Gigatribe is very different than other peer-to-peer networks, in that it is an exclusive invitation only network that is created by the user, which suggest some level of vetting that would occur beforehand before you would allow someone into your inner circle where you intended to share child pornography." Doc. 43 at 8. As such, each and every time that Miezin deleted his account and began anew, he was forced to rebuild a network to share and receive child pornography. Given his pattern of repeatedly deleting accounts, it is impossible to know how wide-ranging Miezin's contacts on Gigatribe were for the 10 months covered by the indictment. It is undisputed, however, that Miezin had little qualms about rebuilding his network and subsequently sharing child pornography with new individuals. He did so **eleven** separate times with undercover law enforcement alone.

Miezin's requested relief herein – home confinement – would not lessen his danger to the community. Quite the opposite, it would only serve to enhance his danger. Miezin's crime does

8

not require anything more than access to the internet. In today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place Miezin in home confinement and eliminate his ability to engage in his prior criminal conduct. Further, the pandemic and the CDC's recommended guidelines would only serve to make it more difficult to monitor Miezin's behavior in home confinement. Because Miezin could engage in his prior criminal conduct at any time from his place of home confinement, effectively monitoring him would require repeated visits to his home. Such visits would enhance the risk of the spread of COVID-19 to Miezin, anyone living with him, and the individuals charged with monitoring his compliance.

Based upon the above, the Court finds that Miezin would be a danger to the community if he were released.[2] Accordingly, he cannot satisfy the requirements for compassionate release. Miezin's motion is DENIED.

       IT IS SO ORDERED.


April 27, 2020                                                     /s/John R. Adams
Date                                                           JOHN R. ADAMS
                                                                UNITED STATES DISTRICT JUDGE

---

[2] It is unclear whether Miezin is included in the class-action litigation filed on behalf of FCI Elkton prisoners and presently before a colleague in this District. However, upon this Court's review, there is no legal authority for a judge other than the sentencing judge to modify a defendant's sentence. Moreover, even if some such authority could be found, this Court would expect that its personal experience with Miezin and its opinion expressed herein would be provided proper deference. Miezin should not be released from incarceration.